IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JAMICQUIN McKINSTRY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:16-cv-02362-JES |
| CHANCE COLBERT, *et al.*, | ) |
| Defendants. | ) |

## SUMMARY JUDGMENT ORDER

Plaintiff, Jamicquin McKinstry, proceeding pro se, filed suit under 42 U.S.C. § 1983, claiming that Defendants Chance Colbert and Jana Phelps failed to protect him from being attacked while Plaintiff was a detainee at the Jerome Combs Detention Center ("JCDC"). Defendants have filed a motion for summary judgment [21], and Plaintiff has responded [25]. Based on the parties' pleadings, depositions, affidavits, and other supporting documents filed with the Court, Defendants' motion for summary judgment is GRANTED.

## I. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "If the moving party has

1

properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015).

A party opposing a properly supported motion for summary judgment, must cite to particular parts of the record or show that the materials cited by the movant do not establish the absence of a genuine dispute. *Melton v. Tippeconoe County*, 838 F.3d 814, 818 (7th Cir. 2016). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A scintilla of evidence in support of the non-movant's position is insufficient to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

## II. MATERIAL FACTS

The events at issue occurred on December 2, 2014, while Plaintiff was housed in E-Pod at JCDC, which consists of 28 double-bunked cells located on an upper and lower tier with a common area. E-Pod is also equipped with security cameras and a desk where correctional officers monitor activity. To minimize the number of detainees in the common area, only one tier level is permitted access. For example, when detainees who are housed in the upper tier have access to the common area, the detainees who are housed in the lower tier are confined to their cells. A detainee's tier location has no meaningful distinction. Defendant Correctional Officers Colbert and Phelps were assigned to E-Pod on December 2, 2014.

## A. The Parties' Testimonial Evidence

Plaintiff, who was assigned to the upper tier, was in the common area talking to Rex Frank, a detainee locked in his lower tier cell. Frank asked Plaintiff to "smack" a third detainee, Gentry, who was located in the common area. (21-1: p. 31:8-17.) Gentry overheard his name and approached Plaintiff. A fourth detainee, Jon Giles, attempted to intervene. Plaintiff took a defensive stance as Gentry approached. Gentry stopped when Defendant Colbert, who was at the desk, ordered them to "knock it off." (*Id*. at 35:16-17.)

Defendant Colbert stated that he gave his order because he "overheard four detainees loudly arguing." (21-2: p. 3:12.) Colbert did not observe "any of these detainees 'square off,' prepare to fight, or otherwise indicate violence towards one another." (*Id*. at 3:13.) Afterward, Colbert did not observe any other disturbances prior to the physical altercation at issue. During this time, Defendant Phelps was on her scheduled break.

Approximately five minutes after Defendant Colbert's order, Plaintiff spoke with Gentry, and they settled their differences amicably. At that moment, Plaintiff admitted that he had no reason to think another detainee wanted to fight him. Plaintiff returned to Frank's cell and heard banging coming from a lower tier cell door. Plaintiff observed a detainee, whom he did not recognize, yelling in his direction. Plaintiff later learned that detainee was Travien Moore.

Plaintiff did not know or have any previous encounters with Moore. Moore called Plaintiff over to his cell and told Plaintiff, "I'm on your ass" and that he had asked Defendant Phelps for a toilet plunger. (21-1: p. 53:16, 20-22.) Plaintiff explained that detainees occasionally ask for a plunger to get a correctional officer to open the cell door so that the detainee can "attack another inmate." (21-1: p. 72:10-12.) Plaintiff stated that he was confused

3

and surprised that Moore "wanted to fight." (*Id*. at 51:4-5.) Plaintiff walked away and ignored Moore. (*Id*. at 48:6-8, 16-17.)

Plaintiff attempted unsuccessfully to enter his locked upper tier cell. Plaintiff yelled down to Defendant Colbert that a "guy down there is threatening me, I don't feel [safe]." (*Id*. at 57:13-17.) Plaintiff admitted that he did not tell Colbert who was threatening him, why he was being threatened, or the specifics of the threats uttered. (*Id*. at 85:18-20.) After Colbert refused to open the cell doors, Plaintiff returned to the lower deck and spoke with Frank. Plaintiff had just met Moore and Gentry that day and could not confirm whether Colbert knew that Moore and Gentry were "affiliated." (*Id*. at 126:21-23; 127:1-8.) Colbert was not aware of any association among Moore and the detainees Plaintiff had been arguing with earlier and had no reason to believe that Plaintiff would be physically attacked by any detainee in E-Pod. (21-2: p. 6:34.)

According to Plaintiff, when he returned to Frank's cell, Moore began "yelling and shaking the door" to his cell multiple times and causing "a big scene," which caught the attention of every detainee in the common area. (21-1: p. 61:9-16.) Plaintiff observed that during this time, Defendant Colbert just sat at his desk "like nothing [was] going to happen." (*Id*. at 59:18.)

Upon her return from a break, Defendant Phelps opened Moore's cell door to deliver a plunger so that Moore could unclog his toilet. Plaintiff admitted that he observed Phelps walking toward Moore's cell with a plunger, but Plaintiff did not approach Phelps. (*Id*. at 71:22-34; 72:1.) When Phelps opened the cell door, Moore rushed past Phelps and ran toward Plaintiff. Plaintiff stated that he was surprised that Moore followed through with his threat, but Plaintiff immediately prepared for a fight. (*Id*. at 92:12-14; 94:20-23.)

When Moore was "too close for comfort," Plaintiff swung and punched Moore in his face. (*Id*. at 97:4.) Defendant Colbert turned his attention to securing the remaining detainees in

4

their upper tier cells while Defendant Phelps called for assistance. The physical altercation between Plaintiff and Moore stopped about forty seconds later when correctional officers responded to Phelps' call for assistance. Moore was transported to a hospital for a laceration to his right eye. Plaintiff was uninjured and declined medical attention.

### B. The Video Evidence

The surveillance video depicts Plaintiff leaning against a wall near the cell occupied by Frank at 6:01 p.m. after Defendant Colbert refused to open Plaintiff's upper tier cell. For two minutes and sixteen seconds, Plaintiff is leaning against that wall, standing, and pacing near Frank's cell. (21-5: 6:01:57 p.m. to 6:04:13 p.m.) During this entire period, Plaintiff's focus is on the cell located on an adjacent wall that is occupied by Moore. Colbert can be seen either sitting or standing at the desk performing various tasks and periodically scanning the common area. The recording does not indicate any type of disturbance is occurring during this period.

At 6:03:13 p.m., Defendant Phelps enters E-Pod carrying a plunger that she places by Moore's cell. A minute later, Phelps opens Moore's cell door to deliver the plunger. Moore steps past Phelps and runs in Plaintiff's direction. Plaintiff and Moore are eventually subdued by several correctional officers.

### III. THE EIGHTH AMENDMENT AND THE FAILURE TO PROTECT STANDARD

Because Plaintiff was a pretrial detainee and not a convicted inmate, his claim proceeds under the Fourteenth Amendment instead of the Eighth Amendment. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) ("[C]onstitutional rights as a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment.") "Although the Eighth Amendment does not apply to pretrial detainees, pretrial detainees are entitled to *at least* as much protection as the constitution provides convicted prisoners." *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir.

2005) (emphasis in original). Thus, the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.'" *Id*. at 478 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)).

"The Due Process Clause of the Fourteenth Amendment protects pre-trial detainees from punishment and places a duty upon jail officials to protect pre-trial detainees from violence." *Fisher v. Lovejoy*, 414 F.3d 659, 661 (7th Cir. 2005). "A prison official is liable for failing to protect an inmate from another prisoner only if the official 'knows of and disregards an excessive risk to inmate health or safety[.]'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015). "A claim that a prison official was deliberately indifferent to such a risk has both an objective and a subjective component." *Id*.

As to the objective component, "a plaintiff must allege not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). A "substantial risk" is one that is so great that it is "almost certain to materialize if nothing is done." *Id.* at 911.

As to the subjective component, "the official must have actual, and not merely constructive knowledge of the risk in order to be held liable; specifically, he 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.'" *Gevas*, 798 F.3d at 480 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "In failure to protect cases, '[a] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety.'" *Pope v. Shafer*, 88 F.3d 90, 92 (7th Cir. 1996) (quoting *McGill v.*

6

*Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991)). A complaint that conveys "only a generalized, vague, or stale concern about one's safety typically will not support [such] an inference." *Gevas*, 798 F.3d at 480.

## IV. ANALYSIS

### 1. Plaintiff's Failure-To-Protect Claim Against Phelps

In his response to Defendants' summary judgment motion, Plaintiff abandons his failure-to-protect claim against Defendant Phelps. Specifically, Plaintiff concedes that Phelps was not deliberately indifferent "because she was not present during the altercation and knew nothing of the statements [Plaintiff] made to [Defendant] Colbert." [25: p. 1.] The Court accepts Plaintiff's concession because the evidence presented against Phelps establishes only that she opened Moore's lower tier cell door under a false pretense that Moore exploited to gain access to Plaintiff. No factual support exists to show that Phelps was aware of facts from which a jury could reasonably infer that Phelps knew of but disregarded an excessive risk to Plaintiff's health or safety. Accordingly, Phelps' motion for summary judgment is granted.

### 2. Plaintiff's Failure-To-Protect Claim Against Defendant Colbert

Plaintiff first contends that Defendant Colbert was aware of the threat posed by Moore based on his argument with Gentry, which occurred "in the same area" as Moore's cell and involved raised voices. However, Plaintiff fails to substantiate how his argument with Gentry, which he amicably settled shortly thereafter, informed Colbert that a subsequent physical altercation with Moore was imminent. Plaintiff admitted that at the time he resolved his differences with Gentry, he had no reason to think that another detainee wanted to fight him. Colbert stated that he was not aware of any information that would lead him to believe that Plaintiff would be attacked by any detainee in E-Pod. Without a plausible connection showing

7

how the earlier verbal argument would provide facts from which to infer that the subsequent physical altercation would occur, Plaintiff had failed to satisfy the subjective component of his failure-to protect claim. *See James v. Dyer*, No. 14-2283, 2016 WL 3647835, at *2-3 (C.D. Ill. July 1, 2016) (concluding that the plaintiff failed to allege a failure-to-protect claim because he had no prior altercations with his assailant and the defendant correctional officer had no indication that the assailant posed a substantial threat of harm to plaintiff).

Plaintiff next contends that he notified Defendant Colbert he was threatened and did not feel safe after attempting unsuccessfully to enter his upper tier cell. However, "[i]n a failure to protect case like this one, the plaintiff must introduce evidence tending to show that the prison official(s) were aware of a specific, impending, and substantial threat to his safety." *Benner v. McAdory*, 34 F. App'x 483, 486 (7th Cir. 2002). Plaintiff admitted that he did not tell Colbert who was threatening him, why he was being threatened, or the specifics of the threats uttered. Instead, Plaintiff told Colbert that a "guy" was threatening him, which is insufficient. *See, e.g., Contreras v. Purtell*, No. 06 C 2156, 2007 WL 4246859, at *2 (N.D. Ill. Nov. 28, 2007) (concluding that the plaintiff's statement he was threatened by an unknown person was not notice of a specific threat because it did not provide sufficient details, such as the assailant's name; nature of threat; and where, when, and how the threat would be carried out).

Plaintiff also contends that Defendant Colbert was aware of an imminent threat against his person because (1) Colbert "did not take his eyes off us" after he observed his altercation with Gentry and (2) when Moore "was yelling threats," Plaintiff "witnessed [Colbert] looking in our direction." (25: p. 2.) However, the video evidence does not support Plaintiff's contentions.

The recording, which begins at 6:01:57 p.m. on December 2, 2014, depicts Defendant Colbert located at the E-Pod desk moving in and out of view of the camera during the two

8

minutes and sixteen seconds that elapsed before Defendant Phelps opened Moore's cell. Colbert's actions do not indicate that a previous disturbance had taken place that required his increased scrutiny. Instead, during this time, Colbert periodically scans the common area briefly as he performs his responsibilities. Colbert is not, as Plaintiff claims, focused on Plaintiff or Moore's cell area. In addition, despite Plaintiff's assertion that Moore was yelling and shaking his cell door multiple times and causing a disturbance that caught the attention of every detainee, the recording does not show any such reaction. Instead, the eleven other detainees located in the common area are either sitting with their back to Plaintiff and Moore's cell or walking to the desk to interact with Colbert. Mere seconds after Plaintiff and Moore begin fighting, however, the detainees in the common area as well as the detainees locked in their lower tier cell, reacted to the disturbance.

Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that no jury could reasonably find that Plaintiff has alleged sufficient facts that Defendant Colbert knew of but consciously disregarded and an excessive risk to Plaintiff's health or safety. Accordingly, Colbert's motion for summary judgment is granted.

## V. QUALIFIED IMMUNITY

Because the court has found that Defendants were not deliberately indifferent, the court need not address defendants' claims that they are entitled to qualified immunity. *Van den Bosch v. Raemisch*, 658 F.3d 778, 787, n.9 (7th Cir. 2011).

**IT IS THEREFORE ORDERED**:

> **1) Defendants' motion for summary judgment [21] is GRANTED pursuant to Fed. R. Civ. P. 56. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff. The case is terminated, with the parties to bear their own costs. All deadlines and internal settings are vacated. All pending motions not addressed in this Order are denied as moot. Plaintiff remains responsible for the $350 filing fee.**

**2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith.** *See* **Fed. R. App. P. 24(a)(1)(c);** *see also Celske v Edwards*, **164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith.");** *Walker v O'Brien*, **216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered June 12, 2018.

s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE